

RECEIVED
BY MAIL
JAN 0 2 2025
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MINNESOTA

Thomas Richard Ollestad ,
Plaintiff.

Civil Action No.  25-cv-03-KMM/LIB

v.

CITY OF MORA, a  Minnesota  municipality,
RUSSELL COLEMAN,  SHERIFF DEPUTY, in his individual capacity,
DYLAN VANGORDEN,SHERIFF  DEPUTY, in his  individual capacity, and
JAKE KLESZKY SHERIFF DEPUTY, in his individual capacity.
Defendants.

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff Thomas Richard Ollestad ,PRO SE PLAINTIFF, respectfully alleges for his  Complaint

and Jury Demand as follows:

## I. INTRODUCTION

1. This is an action for damages and other  relief against the Defendants pursuant to 42 U.S.C.

§ 1983 and the Rehabilitation Act, 29 U.S.C. § 794, 42 U.S.C. 1701-1273 title II Americans with

Disabilities act



SCANNED
JAN 02 2025
U.S. DISTRICT COURT MPLS

2. At approx 4:15pm on 3-21-2024 Defendant Officer Colman Vangorden and Kleszky violently assaulted Plaintiff, without provocation, as he was on the public computer in the kanabec County courthouse located in Mora MN

3. Mr. Ollestad is 38 years old and has suffered from Depression anxiety and Panic attacks and adjustment disorder after the county has unlawfully taken his children. Officers Coleman, Vangorden, Kleszky approached him from behind Mr. Ollestad the three officers unlawfully sole purpose was to and Harass and intimate him with threats of violence and illegal use if force upon him lcr# 24-003069 report of a "unwanted person in the courthouse that the county attorney Barbera McFadden reported him, the three officers threaten to arrest him for violating a unlawful and void order In violation of Mr Ollestads constitutional right the administrative order # 33-cv-ad-24-3 that Bands him from the courthouse in the county in which he resides,

Mr Ollestad stated multiple times to all three officers that the Order was void and illegal to enforce on him, after Mr Ollestad asserted to the officers multiple times he had the Right to be at the courthouse and can't be kicked out of the Public courthouse on a administrative order issued ex parte and in violation of his 5th and 14th amendment Rights after being told multiple times to leave he said no I'm not leaving and after stated he was not leaving and he has the Right to access judicial services in the county he resides and because he has zero convictions since 2012 and the Order is void and illegal to enforce  and issued in violation of constituion of the state of Minnesota Article 3 sec 1 the separation of powers and that was when all three officers at the same time attacks him from behind as he was bent over using the computer at the Kanabec County courthouse all three officers proceeded to violently assaulted him , twisting his broken shoulder behind his back, throwing him violently  to the ground faceplanting him to the ground and kneeling down on his back handcuffing him as two kanabec County courthouse administrators watched and did nothing but laughed as he screamed in pain "ouch my shoulder is broken"

# I. JURISDICTION AND VENUE

3. This action arises under the Constitution and laws of the United and is brought pursuant to 42 U.S.C. § 1983; ;. and the Rehabilitation Act, 29 U.S.C. § 794

4  Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and 1343(a)(3).

5. Jurisdiction supporting Plaintiff's claim for attorney fees and costs is conferred by 42 U.S.C. 1988

6. Venue is proper in the District of Minnesota  pursuant to 28 U.S.C. § 1391(b). All of the events alleged herein occurred within the State of Minnesota  or were directed at individuals within the State of Minnesota .

## III. PARTIES

7. Plaintiff, Thomas Richard Ollestad , is a citizen of the United States and a resident of the State of Minnesota he resides in Kanabec county

8. Defendant City of Mora was at all times relevant to this Complaint, a Minnesota municipality.

9. Defendant  Russell Colman is a natural person, and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the City of Mora in Mora, Minnesota . At all times relevant hereto Defendant Coleman was acting under color of law, including when his actions were in violation of the Constitution and laws of the State of Minnesota  and the Constitution and laws of the United States of America. Officer coleman is a named Defendant in his individual capacity.

10. Defendant Doe Kleszky is a natural person, and was at all times relevant to this Complaint duly appointed and sworn as a police officer for the City of  Mora,in mora,  Minnesota . At all times relevant hereto, Defendant Kleszky was acting under color of law, including when his actions were in violation of the Constitution and laws of the State of Minnesota  and the

Constitution and laws of the United States of America. Officer Kleszky  is a named Defendant in his individual capacity.

11. Defendant Vangorden a natural person, and was at all times relevant to this Complaint duly appointed and sworn as a sergeant officer for the police department in City

Mora, Minnesota . At all times relevant hereto, Defendant Vangorden was acting under color of law, including when his actions were in violation of the Constitution and laws of the State of Minnesota  and the Constitution and laws of the United States of America. Sergeant Vangorden is a named Defendant in his individual capacity.

## IV.FACTUAL ALLEGATION

12.  Mr. Ollestad  is an individual with mental anguish disabilities he suffering from as a result of kanabec County elected officials taking his two children unlawfully and illegally

13. @ 412pm  Mr. Ollestad on March 21 2024 walked up to the courthouse in the City of MORA (Kanabec county courthouse) @ 317 E Maple Ave Mora MN 55051 Mr Ollestad Walked through the 1st level hallway and to the west stairwell and proceeded to go up to the third floor and then into the law library to use the computer immediately after entering the law library Mr Ollestad realized that he was unable to access  the documents from his custody case file and the only way to get the copies of the case file for appeal he was going to file he must use the computer in hallway with the courthouse access terminal and so he exited the library and proceeded to go to the computer in the hallway

@ 4:13pm– Mr Ollestad sat down at the computer and searched for the case and began printing documents he needed

(***It should be noted that prior to the officers arrival Mr Ollestad had not seen or spoke to anyone in the courthouse as he was simply exerciseIng his federally protected constitutional

rights to access judicial services in the county in which he resides on the public computer in the public courthouse hallway )

**14. Administrative order 33-CV-AD-24-3 is illegal on the following grounds**

   A. Administrative order law enforcement was trying to enforce and ultimately arrested Mr Ollestad for violating was void on its face and discriminatory in nature (Minnesota statute 363A.03 Subd. 13.**Discriminate.** The term "discriminate" includes segregate, separate, or harassment. ) and fringes upon Independence well know and established constitutional rights and the court did not have the authority to broadly restrict a citizens from accessing judicial services in the county in which he resides

   B. Administrative order is void on its face as a defendant cannot be trespassed from the public Courthouse under the authority cited in said order (33-cv-ad-24-3)

   C. The order in question was civil in nature and Mr Ollestad can not be subject to criminal prosecution for violating said order
(See. Minnesota statute chapter 14.045 AGENCIES; LIMITS ON PENALTIES AND FINES Subd. 2.Criminal penalty. An agency may not, by rule, establish a criminal penalty unless the agency has specific statutory authority to do so.)

   D. Administrative order was not subject to review and appears to be issued EX parte in violation of Mr Ollestads 5th and 14th amendment rights to due process and equal protection

   E. law enforcement did not have the requisite probable cause to arrest defendant and subsequently search him due to illegal and unconstitutional discriminatory order

   F. There's no probable cause to support the charges when considering that illegal derivative evidence

G. Administrative order was not served upon the dependent until after the arrest of the
defendant on 3-21-2024 approximately 4:19:01 p.m. In the parking lot of the courthouse
after he had been illegally searched in violation of his fourth amendment constitutional
rights

H. 14.45 RULE DECLARED INVALID.

In proceedings under section 14.44, the court shall declare the rule invalid if it finds that
it violates constitutional provisions or exceeds the statutory authority of the agency or
was adopted without compliance with statutory rulemaking procedures

### Officers Coleman and Kleszky Arrive

15. 4:13:45 pm Officers Coleman and Kelsky Arrive and approach Mr Ollestad stated multiple
times he had to go and was not allowed in the courthouse Mr Ollestad then multiple times
replied no he did not have to leave and that the Order was illegal to enforce and in violation of
his constitutional rights

### Officers Vangorden arrived

16. @ 4:14:38 pm officer Vangorden joined in this is the verbatim statement between officers
and Mr Ollestad from the audio recording of the incident

**Officers**   "Thomas you got to go "

**Mr Ollestad**  " No I don't I'm not leaving"

**Officers** " so you are refusing to leave "

**Mr Ollestad**. " ya"

**Officers** "Well you got to go okay"

**Mr Ollestad** "I will when I'm done printing my papers"

**Officers** "no right now"

**Mr Ollestad** (no response from plaintiff as he was trying to ignore the officers and just peacefully sit there and print off his paperwork )

**Officers** " you're not allowed to be over here"

**Mr Ollestad** (again no response from the plaintiff as he was deliberately ignoring them and peacefully printing office paperwork in hopes that they would just leave him alone)

**Officers** " ok let's go"

**Mr Ollestad** (again no response from the plaintiff simply just peacefully printing office paperwork in silence trying to avoid any further exaltation)

**Officers** "Thomas"

**Mr Ollestad** "I have a constitutional right to be here"

**Officers** "let's go"

**Mr Ollestad** " I have a constitutional f****** right to be here"

**Officers** "let's go"

**Mr Ollestad**. (No response )

**Officers**"let's go"

**Mr Ollestad** (again no response )

**Officers** "let's go"

**Mr Ollestad** "( no response)

**Officers** "or you are going to jail for a disorderly conduct "

**Mr Ollestad** "I don't give a f***"


**Officers** " okay then"

**Mr Ollestad** " what are you going to do put another fake order on me"


**Officers** "let's go"

**Mr Ollestad** " no"


**Officers**"Thomas"

**Mr Ollestad** (no response)


**Officers** "Thomas you're leaving"

**Mr Ollestad**"no I'm not"


**Officers**"ok" laughing by all three officers


17. Immediately after ok and laughter by all three officers

@ 4:15:08 pm on the day in question  thirty seconds from the arrival of the third Officer Van Gordon . All three Officers violently assaulted Mr OLLESTAD— who were wearing body armor and was armed with a baton, taser, firearm and a lapel microphone with which he could talk to dispatch and request information about the Administrative order 33-cv-ad-24-3 that the officers claim Mr OLLESTAD violated and did not call dispatch or there supervisor . Instead, all three officers immediately and physically assaulted Mr Ollestad  From behind  as he was still facing the computer and never once turned to face them and was peacefully "printing documents "see icr #24-003069

18. The officers then began to bend Mr. Ollestad 's left arm , and violently twisted it behind his back and at the same time another officer grabbed his broken Right side shoulder and violently twisted it behind his back. Then he threw him face first into the ground while tripping out his right legs applying all their force on his back and climbed on top of him still inflicting unbearable pain on him upon using the painful rear wristlock maneuver he was employing to put him in handcuffs. As shown in the photos below



19.All Three officers attacking at the exactly same second and as you can see in the photo he is facing the computer bent down to the keyboard because officers pulled out his chair from underneath him so he peacefully stood up and continue to print off the documents

10



29. photo shows officer Kleszky pulling him downward by his broken rights shoulder with all his weight and knee bent downward applying all the pressure to the broken shoulder While officer Van Gordon is pulling up and backwards on Mr Ollestad left arm and standing completely behind Mr Ollestad



21.THIS PHOTO SHOWS OFFICER Kleszky PULLING OUT A UP ON MY BROKEN

SHOULDER WHILE PUSHING DOWNWARD ON MY UPPER BACK AND TRIPPING OUT MY

RIGHT LEG FORCING ME TO FACE-PLANT

---



22(This photo shows Mr Ollestad attempting to catch himself with his broken shoulder while
officer Kleszky is pulling it out from underneath him and pushing downward on his upper back
and officer VanGordon pushing downward on his lower back

---

12



23. This one shows both officers VanGordon and officer KLESZKY on top of me as they twist

my broken shoulder back and upwards to put there handcuffs on me

It was then over the audio you here him sceam in pain "ouch my fucking arm is Broken"


The picture below shows Mr Ollestad shoulder and the permanent disfigurement



24. Any reasonable officer would have discerned from visual observations of Mr. Ollestad  up to this point that there was a high likelihood he would be traumatized and Cause permanent emotional Duress and lasting effects on Mr Ollestad mental health

## Kanabec County Sheriff — Incident Report

M-Disorderly Conduct

24-003069

3/21/24   15:17

317 E Maple AVE, Courthouse, Mora, MN, 55051

Offense - 1: 609.72.1
Offense - 2: 609.50.1(2)

**NARRATIVE**

Evidence:
Audio

On March 21, 2024, at approximately 1517 hours, I was dispatched to the address of 317 E. Maple Ave., for an unwanted person. Initial information said that the County Attorney's Office was reporting that THOMAS RICHARD OLLESTAD DOB 07/02/1986 was up on the 3rd floor in Court Administration at the computers.

Deputy Kleszyk, Sgt. VanGorden and I responded to Court Administration on the westside of the 3rd floor, where I observed OLLESTAD sitting at a computer printing off multiple documents. We made contact with OLLESTAD and advised him that he needed to leave the Court House. To which OLLESTAD replied that he would not, and continued printing paperwork. OLLESTAD was directed

Reporting Officer: Coleman, Russell

Badge Number: 3117

Report Date: 03/22/2024

**Kanabec County Sheriff**                                                                  **Continuation**

24-003069          317 E Maple AVE, Courthouse, Mora, MN, 55051                    03/21/2024

that he needed to leave the Court House, to which he stated that he would not be going anywhere and that he would have to be physically removed. OLLESTAD was informed that there was an order that was issued to him the prior day, barring him from the west side of the Court House which is the Court Administration area. OLLESTAD stated that the order was bullshit, and that he had every legal right to be there. During this time, OLLESTAD began using loud profanity in a public area extensively, at which time OLLESTAD was informed that he was going to be placed under arrest for disorderly conduct. OLLESTAD was told to standup and place his hands behind his back, to which he initially did. As soon as handcuffs were being placed on OLLESTAD, he started becoming resistant and tensing up, continuing to use profanity at the deputies in the area. OLLESTAD was then brought to the ground, which he was then placed into handcuffs, which were checked for spacing and double locked. OLLESTAD continued using profanity and stating that he would just be back on Monday and would be going back to jail. Basically, stating that he was going to continue to violate the order that was set in place by the Honorable Judge Hiljus.

OLLESTAD was escorted downstairs, and out to my squad car where he was searched incident to arrest, to where a knife was located in his front left pocket. It should be noted that during the arrest OLLESTAD was complaining of a broken shoulder, which he referenced the right shoulder. It should also be noted that I was on OLLESTAD'S left arm and shoulder while I was placing him in handcuffs. OLLESTAD continued during the transportation to the jail and in that jail that he was going to sue everyone and continued to be belligerent. OLLESTAD was booked under Disorderly Conduct and all proper paperwork was completed.

During the encounter and arrest with OLLESTAD, he had made it clear that he was not going to follow the order set in place, and that the order was bullshit. OLLESTAD had made some comments about law enforcement having to kill him.

No Further Information.

End of Report.
Deputy Russ Coleman
tmm

CC: Kanabec County Attorney's Office

NAMES



25. Kanabec County sheriff's Office incident report number 24-003069 reads <u>verbatim</u> as follows:

On March 31st 610 and approximately 1517 hours officers were dispatched to the address of 317 East Maple avenue (kanabec County Courthouse) after information from the county attorney's office of a report that Thomas Richard Ollestad date of birth

07/02/1986 was upon the third floor in court administration at the computers **officers KLESZKY and Sergeant Van Gordon and officer Russell Coleman responded Court administration on the west side of the third floor and observed Ollestad sitting at the computer printing off multiple documents** and states that officers made contact with Ollestad and advised him he needed to leave the courthouse to which he replied he would not and continued printing paperwork OLLESTAD was directed that he needed to leave the courthouse to which she stated that he would not be going anywhere and that he would have to be physically removed Ollestad was informed that there was an order that was issued to him the prior day barring him from the west side of the courthouse which is Court administration area Ollestad stated that the order was b******* ,and that he had every legal right to be there, during this time Ollestad began to use profanity in a public area extensively at which time Ollestad was informed that he would be placed under arrest for disorderly conduct Ollestad was asked to stand up and place his hands behind his back, to which he initial did as soon as the handcuffs were being placed on Ollestad he started to resist and began tensing up , continued to use profanity at the deputy's in the area Ollestad was then brought to the ground Which he was then placed into handcuffs that's funny with your check for spacing and double locked mostly continued using profanity and said that he would just be back on Monday and he would be going back to jail, basically starring that he was going to continue to violTe the order that was set in place by honorable judge Hiljus

 Ollestad was escorted downstairs and out to my squad car where he searched incident to the arrest to wear a knife was located in his front left pocket ,it should be noted that during the arrest Ollestad was complaining of a broken shoulder which he reference his right shoulder,it should also be noted that I was on Ollestads left arm and shoulder while I was placing him in handcuffs Ollestad continued during transcription to the jail and tat

in the jail that he was going to sue everyone and continued to be belligerent Ollestad was
booked for disorderly conduct and all proper paperwork was completed during the
encounter and arrest with Ollestad be had made it clear that he was not going to follow
the order set in place and that the Order was bullsh*t Ollestad had some comments about
law enforcement having to kill him


No further information

 End of Report

Deputy Russ Coleman

tmm


CC kanabec County attorney office

---

Icr# 24-003069 is evidence of following Violations  of Minnesota CHAPTER 609
CRIMINAL CODE as follows
26. County attorney Barbara McFadden reports that an unwanted Person in the
courthouse is in Violation of Minnesota statutes 609.505 falsely reporting a crime And the
report of an unwanted Person in the courthouse is in Violation of Minn Stat 363A.03
Subd. 13.Discriminate. The term "discriminate" includes segregate, separate, or
harassment.

26. The threat of illegal use of force and threats of violence to Mr Ollestad and unlawful

Demands by all officers Coleman vanGorden and KLESZKY in pursuant to the report of

an unwanted Person are in Violation of Minn stat 609.27 COERCION.

> Subdivision 1.Acts constituting. Whoever orally or in writing makes any of the
>
> following threats and thereby causes another against the other's will to do any act
>
> or forbear doing a lawful act is guilty of coercion and may be sentenced as
>
> provided in subdivision 2:
>
> (1) a threat to unlawfully inflict bodily harm upon, or hold in confinement,
>
> (2) a threat to unlawfully inflict damage to the property of the person threatened or
>
> another; o
>
> (4) a threat to publish a defamatory statement, or otherwise to expose any person
>
> to disgrace or ridicule; or
>
> (5) a threat to make or cause to be made a criminal charge, whether true or false;

27. All officers actions are in Violation of Minn Stat 626.5531 reportings of crimes

motivated by bias of Mr Ollestad

And then the arrest without without probable cause to a citizen who is a vulnerable adult

as defined by 626.5572 subd 21 (3) and (4) and

Against Mr Ollestad who has a disability as defined byMinn Stat 363A.03 Subd.

12.Disability. "Disability" means any condition or characteristic that renders a person a

disabled person. A disabled person is any person who (1) has a physical, sensory, or

mental impairment which materially limits one or more major life activities; (2) has a

record of such an impairment; (3) is regarded as having such an impairment; or (4) has

an impairment that is episodic or in remission and would materially limit a major life

activity when active.

28. And while he was in recovery from a separated shoulder he suffered on 2/1/2024 a month prior to the violent arrest and  assaulted by the Defendant officers Coleman VanGordon and KLESZKY

These officers actions on the day in question are nothing short of inhumane and are truly vile and evil intentional infliction of emotional duress for no just reason and are the definition of shocking the census and must be investigated as state law requires pursuant to Minnesota statute 626.5534

The Defendant officers then decided to fabricated evidence that is nothing but lies to cover the misconduct and put Mr Ollestad in county jail for 11 days without medical care and extortion of 8 thousand dollars in bail and slandered his character and filed defamatory and untrue criminal offenses aglnst him to make him suffer more cause apparently in the eyes of these evil a corrupt cops he had not suffered enough for trying to exercise his rights that are guaranteed to everyone by the constitution of the state of Minnesota and the constitution of the united States these officers actions are a extreme threat to public safety and must be addressed and punished and for this reason Mr Ollestad believes he should be awarded the prayer for relief below by the Courts and any additional relief the courts see needed


**FIRST CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – 4th Amendment Violation – Excessive Force**

**(against Defendant officers Coleman, KLESZKY and VanGordon)**

29. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

30 When Defendant officers  suddenly and without warning physically attacked Mr. Ollestad by– among other things – grabbing and twisting his arm, slamming him to the ground, climbing

on top of his back, and violently handcuffing him as set forth in the paragraphs above, this was an assault upon Mr. Ollestad 's person, employing excessive force, in violation of the Fourth Amendment.

**31.** No officer (besides those employed at KANABEC COUNTY) would consider Defendant Sudden and unannounced deployment of painful force and excessive aggression upon Mr. Ollestad to have been reasonable or justified under the circumstances.

### 32. Statewide policy

"A sworn employee will never use unnecessary force or violence and will use only such force in the discharge of duty as is reasonable and appropriate in each circumstance. Force should be used only when negotiation and persuasion have been found to be inappropriate or ineffective. While the use of force is occasionally unavoidable, every law enforcement employee will refrain from applying the unnecessary infliction of pain or suffering and will never engage in cruel, degrading, or inhuman treatment of any person."

33. The three officers in question attempted neither negotiation but rather in the mere 90 seconds of contact they had with Mr. Ollestad before assaulting him from behind while he was bent down over the computer flipping him around and throwing his body to the ground and violently handcuffing him .

33. Defendant officers unprovoked and unwarranted attack of Mr. Ollestad ripping downward on his broken shoulder, handcuffing his broken shoulder while he was on the ground was the literal definition of "the unnecessary infliction of

pain" and "cruel, degrading or inhuman treatment of any person." This violent maneuver, endorsed and trained by no self-respecting law enforcement agency anywhere due to its obvious likelihood of causing serious pain and physical injury (dislocation), was used on Mr Ollestad for the purpose of injuring him and showing him that Defendants were "in charge." This sad reality is further cemented by callous Acts to Mr. Ollestad

after further injury to his broken/ dislocated shoulder

34. Defendant officers had both the duty and ample opportunity to intervene to stop other Officers ongoing violence upon Mr. Ollestad but chose instead to materially assist in the continuation and cover-up by holding Mr. Ollestad down while he suffered further injury to his broken/dislocated shoulder and joining him in throwing Mr. Ollestad 's handcuffed body onto the ground after knowing Mr Ollestad shoulder was broken/separated.

35. Defendant officers Coleman personally continued the excessive force violations by Defendant when they held Mr. Ollestad down on the ground while Officer Kleszky and Vangorden ripped Mr Ollestad's right handcuffed arm upwards, dislocating and reinjuring his shoulder.

36. Defendants officers used excessive force in seizing Mr. Ollestad , handcuffing his unduly aggressively, broken and dislocated shoulder,, and then

forcing his to remain handcuffed and restrained for an excessively lengthy period of time.

37. The Fourth Amendment forbids unreasonable seizures, which includes seizures carried out with excessive force, like this one.

38. The Defendants unreasonably and unconstitutionally seized Mr. Ollestad and used excessive force in light of the totality of the circumstances, including but not limited to:

a. Mr. Ollestad had not engaged in ANY criminal activity;

b. Mr. Ollestad posed no physical threat to anyone, anywhere;

c. Mr. Ollestad was facing the computer screen bent over with one hand on the mouse and other on the keyboard of the computer

d. Mr. Ollestad was not attempting to resist anyone but instead was simply printing documents for an appeal of his custody case

e. Mr. Ollestad 's injured broken Right shoulder and facing away from the officers ;

f. The failure of all three officers to appropriately approach and handle a citizen w/out no reason
whatsoever and the three Officers aggressive, violent, and threatening actions that prompted
Mr. Ollestad to panic and have lastly anxiety and fear for the rest of his life.

39. Mr. Ollestad 's right to be free from unreasonable seizure and excessive force as described
In the 4th amendment  was clearly established at the time the Defendant officers
attacked him, handcuffed him , further injuring his already injured shoulder , and then kept him
in isolation away from medical care in pain for the following 11 days in the Kanabec County jail

40 The Mora Police Department and their officers often interact with people who are
Access Judicial services,  and thus the circumstances constituted a usual and recurring
situation.

38. Defendant officers  affected their assaults and injuries to Mr. Ollestad , and
Defendant officers all approved of and directed the continuation of those assaults and
injuries, with deliberate indifference to his rights under the Fourth Amendment to the U.S.
Constitution.

41. Defendants' sudden seizure and violent extended assault upon Mr. Ollestad  caused his  to
experience great physical pain, injury, and terror. The experience of this event caused and
continues to cause Mr. Ollestad  trauma and emotional distress, along with lasting physical
injuries and permanent disfigurement of Right shoulder as shown in photo above

---

**SECOND CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Fourth Amendment – Deliberate Indifference to Medical**
**Need/Excessive Force/Failure to Provide Medical Care.**
**(against Defendants Kelsky, Vangorden and Coleman)**

42. Plaintiff hereby incorporates all  paragraphs of this Complaint as if fully set forth

In complaint  Mr. Ollestad  needed medical care following the injuries inflicted upon him by the
defendant officers. His  need for medical treatment was visibly apparent and objectively obvious.
And admitted in the above police officers Coleman report

43. The defendant officers were subjectively aware of Mr. Ollestad 's injuries requiring medical
treatment, as evidenced in there verbatim statement in Police report # 24-003069 "*t should be
noted

44. Mr. Ollestad telling Officers  that his  shoulder hurt following arrest and officers Coleman
replying "

45. Mr. Ollestad 's repeated statements regarding his  shoulder being injured;

46. The concealment effort made by the officers

47. The fact of Mr. Ollestad  gasps out in pain every time his Right shoulder  was touched during
and after the officers re injured his broken left shoulder

48.  What common sense and life experience tells us Officers tone and comment
meant when he inflicted the acute injury to Mr. Ollestad 's shoulder on the ground
and then asked him after


**Mr Ollestad** s "my shoulder is broken"

**Officer Coleman** "which one"


**Mr Ollestad** "my right one"

**officer Coleman** "ok well this is your left one "


**Officer Coleman** "this is your left one did you know that this is your left arm"


Followed by the three officers laughing at Mr Ollestad as he is in pain from the injuries

49. Keeping Mr. Ollestad in handcuffs, in isolation, and without access to critical medical treatment exacerbated both Mr. Ollestad 's physical injuries and emotional trauma.

50. The decision made by three Officers and executed by all Three officers to not inform the kanabec County jail of Mr. Ollestad 's serious injuries quite foreseeably ensured (particularly given his mental health and inability to communicate or advocate for himself) that he would continue to be deprived of medical treatment once transported to the jail and left in a cell for 11 days

51. The kanabec County jail relies on other agencies following written policies that require them to notify the jail of any possible injuries for transported arrestees. The jail naturally and foreseeably assumes that if an arrestee has been involved in a use of force incident injuries, the Police will include that information in the booking information that accompanies the transferred arrestee, so that proper medical notice, attention and care can be provided.

52. Defendant officers violated this policy, keeping the jail deliberately ignorant of Mr. Ollestad's injuries, which needlessly caused Mr. Ollestad more injury, more trauma, and more pain and suffering. Defendant officers knowingly and deliberately ignored Mr. Ollestad 's serious medical conditions, and Mr. Ollestad also repeatedly alerted them to the fact that he was in severe pain, which they also ignored his request for medical treatment.

53.As a proximate result of the Defendant officers' deliberate indifference to his serious medical needs, Mr. Ollestad experienced hours of needless additional pain and suffering requiring treatment with analgesics and a sling. he experienced heightened and more severe physical pain and trauma along with worsened physical injury, by the defendants keeping his painfully restrained in handcuffs after they had reinjured his broken and dislocated his shoulder.

54. Defendants knew about Mr. Ollestad 's situation, directed that he be denied medical care in violation of policy, and directed that he be transported to the jail without medical care or treatment. Defendants i knew of Mr. Ollestad 's obvious medical

needs and elected to ignore them out of deliberate indifference and pursuant to Defendant

Officers orders

55. No officer would consider the Defendants' keeping the injured broken, and Mr

Ollestad  in isolation, without access to medical treatment or mental health assistance, while

complaining of multiple physical injuries, to have been reasonable or justified under the

circumstances. There is absolutely no justification for the Defendants' decision to deprive Mr

Ollestad of even momentary access to medical care for over many hours and for the next 11

days

56 .Defendants deprived Mr. Ollestad  of medical treatment with deliberate indifference to his

rights under the Fourth Amendment to the U.S. Constitution, and caused his  needless

additional trauma, pain, exacerbated injury, anguish, and suffering.

---

**THIRD CLAIM FOR RELIEF**

**42 U.S.C. § 1701-1273 – Violations of Title II of Americans With Disabilities Act**

**(against Defendants Mora, Vangorden Coleman and Kelsky)**


57. All preceding paragraphs of this Complaint are incorporated here for purposes of this

Claim.

58. Title II of the ADA prohibits public entities from discrimination on the basis of a disability.

42 U.S.C. § 17311(1)(B)). Title II of the ADA requires reasonable accommodation during

arrest for people with mental disabilities. Specifically, it requires "reasonable modifications in

policies, practices or procedures." 28 C.F.R. § 35.130(b)(7).

56. Mr. Ollestad was suffering from Panic attacks and anxiety follow up with severe Depression time of this incident. he was and is, mentally exhausted

59. .Mr. Ollestad is a qualified individual with a disability under the ADA. He has Panic attacks and anxiety and severe Depression which substantially limit his major life activities by causing his to suffer from serious loss of enjoyment of life and impairment along with extraordinary challenge in his ability to focus on tasks

60. Title II of the ADA applies to the arrest context. Gohier v. Enright, 186 F.3d 176 (10th Cir. 1999).

61. Officer's choice to treat the exercise of Civil Rights and liberties

of Mr. Ollestad 's (not following illegal commands, being confused and frantic when tackled) as illegal activity (contempt, resisting arrest, obstruction).

This was discrimination in violation of Title II of the ADA. See Gohier, 186 F.3d at 126.

62 Mr. Ollestad , by virtue of his mental anguish, could not speak for himself or understand Officers malicious intentions.

63. The effects of Mr. Ollestad 's disabilities were lawful in fact and treated as criminal by the defendant officers, in violation of the ADA.

64. The defendants also violated Mr. Ollestad 's rights under the ADA because they failed to reasonably accommodate his disability in the course of investigation and arrest, causing him to suffer greater injury, trauma, and indignity in that process than other arrestees. See id.

65. The defendant officers failed to provide modifications or reasonable accommodations to Mr. Ollestad in light of his disabilities and the City of Mora failed to adopt policies and procedures, or adequately train its police officers to safely interact with people who suffer such common disabilities.

66. Some reasonable accommodations for a person with mental anguish include employing non-threatening communications, using less confrontational tactics, allowing the passage of time to defuse the situation . Officers did none of these things because the three officers were

not trained to do any of these things and because it was the custom and practice at Kanabec County sheriff office to never do any of these things.

67 officers swear oaths and policies to have trained its officers in Crisis Intervention Team training which is supposed to educate officers on how to de-escalate encounters with those undergoing a mental health crisis or suffering from mental disabilities. If this is true, then the videos in this case further evidence the custom at the sheriff's office of disregarding all training in favor of using needless force and making aggressive arrests where ever possible.

68 Unlawful discrimination, pursuant to DOJ regulation, includes a failure to make "reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. 35.130(b)(7).

69. Mr. Ollestad 's alleged violation was reported in violation of Minnesota stat. 609.505 to Officers they also knew that no one suffered any actual injury or loss as results of Mr Ollestad. There was neither emergency or danger to violently arrest Mr. Ollestad nor did he represent a direct threat to anyone within a hundred miles.

70. Through the defendant officers, Mora denied Mr. Ollestad reasonable accommodations.

71. . Because the officers denied Mr. Ollestad reasonable accommodations, the defendants caused Mr. Ollestad to suffer greater injury and indignity in those processes than other arrestees.

72. The defendant officers knew that accommodations were necessary under Police written policies but were indifferent to an obvious risk of not providing the accommodations.

70 The City of Mora denied Mr. Ollestad the benefit of properly trained officers who would be trained to appropriately interact with adults suffering from foreseeable, common place disabilities and reasonably accommodate those individuals.

73. The City was on notice of the need for more or different training but was deliberately indifferent to that need.

74. Further ,once Defendant Officers had further broken and dislocated Mr. Ollestad 's shoulder, he then had yet another disability – this time a physical one, that of a visibly broken and dislocated arm – which the Defendants again failed to provide any reasonable accommodation for, leaving Mr. Ollestad painfully in handcuffs and denying his medical care for 11 days in violation of not just the Constitution, but yet again the ADA.

75. As a proximate result of Defendant City of Mora's and Defendant officers' actions and inactions, Mr. Ollestad was injured, suffered physically and emotionally, and continues to experience fear, trauma, and anxiety anywhere outside of his home.

76. What little sense of freedom and happiness that was left in Mr. Ollestad 's experience of his life as any adult suffering from declining mental health was completely destroyed by the Sheriff's Department.

77. As a result of the City of Mora's and its officers' violations of Title II of the ADA, Mr Ollestad well established constitutional rights and liberties Mr Ollestad is entitled to compensatory damages and reasonable attorneys' fees and costs.

---

**FOURTH CLAIM FOR RELIEF**

**Violations of the Rehabilitation Act – 29 U.S.C. § 794**

**(against Defendant City of Mora)**

78. Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein

77. Section 504 of the RA forbids programs that receive federal financial assistance to discriminate against individuals with a disability solely because of their disability. 29 U.S.C. § 794(a).

78. The Mora Police Department receives federal financial assistance.

80. Mr. Ollestad is a qualified individual with a disability under the Rehabilitation Act.

81 Through the actions of the Defendant officers and through its own failures to train and unlawful customs and practices, Mora denied Mr. Ollestad reasonable accommodations for his disabilities.

82. Because Mora and its officers denied Mr. Ollestad reasonable accommodations, Defendant City of Mora caused Mr. Ollestad to suffer greater injury and indignity in those processes than other arrestees.

83 The Defendant officers discriminated against Mr. Ollestad solely as a result of his disability.

84. As a proximate result of the Defendant City of Mora's actions and inactions, Ollestad suffered physically and emotionally and continues to experience fear, trauma, and anxiety anywhere outside of his home.

85 . As a result of city of Mora's violations of Section 504 of the Rehabilitation Act, Mr. Ollestad is entitled to compensatory damages and reasonable attorneys' fees and costs.

---

**FIFTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – Violation of Fourth Amendment – Failure to Train and Supervise (against Defendants)**

86 Plaintiff incorporates all other paragraphs of this Complaint for purposes of this claim.

87,Defendant Coleman and Defendant Kelsky,Defendant Vangorden immediate supervisor, had a duty to train and supervise them to ensure they were not engaging in conduct that violated the civil rights of citizens like Mr. Ollestad .

88. Instead of carrying out this duty, Defendants chose to encourage the misconduct of

needless escalation, aggression and excessive force witnessed by the Defendants against Mr.

Ollestad in this case, as well as the denial of medical care.

89. Defendant officers use of excessive force and their illegal seizure and assault

upon Mr. Ollestad  was the direct result of Defendants officers deliberate indifference to the

civil rights of citizens and of mental health of  citizens in particular, and his repeated failure and

refusal to intervene to supervise, train, or otherwise put a stop to such misconduct.

90 . Defendant officers also had specific opportunity to intervene to stop the civil rights

violations being inflicted upon Mr. Ollestad , when he took over the scene. Rather than

intervene, however, they  personally assisted all other  Defendants Officers

in working to cover up the evidence of their violations of Mr. Ollestad 's civil rights.

91. Defendant officers also set in motion the violations of Mr. Ollestad 's rights when he, over

the preceding year , repeatedly condoned and approved of the needlessly escalatory,

aggressive type of arrest and use of force conduct deployed by the officers in this case. As a

Officers duty to report has read report after report from all three Officers as

well as other  officers in which it was plain that excessive force had been used, and rather  than

retrain or supervise the officers, Sergeant instead complimented and made jokes about

the harms they were inflicting upon citizens, and at times (like in this case) would also openly

conspires with his subordinates at the police station to cover up their violations of civil rights.

92. Defendants Officers conduct proximately caused injuries, damages, and losses to Mr

Ollestad

**SIXTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – 4th Amendment Violation – Municipal Liability for Unconstitutional**

**Custom/Practice, Failure to Train, Failure to Supervise**

**(against Defendant City of Mora)**

93. Plaintiff hereby incorporates all other  paragraphs of this Complaint as if fully set forth
here in

94. All of the acts described herein were done by Defendants Vangorden, Coleman and Kleszky
intentionally, knowingly, willfully, wantonly, maliciously, and recklessly in disregard for Mr
Ollestad federally protected rights, and they were done pursuant to the pre-existing and
ongoing deliberately indifferent customs, policies and practices of the Defendant City of
Mora, under color of state law.

95. The  Police Department's customs and practices of unlawful conduct (and failures
to train/supervise to prevent the same) proximately causing the harms described here in to Mr
Ollestad include, but are not limited to:

a. City of Mora's custom and practice is to permit its officers to aggressively and violently arrest
any citizen at the first sign of possible noncompliance with any command (regardless of whether
that command is actually lawful);

b.City of Mora's custom and practice is to ignore all its written policies regarding de-
escalation, reasonable use of force, appropriate treatment of people

c. It is the custom and practice at CITY OF Mora to regularly use excessive force when putting
someone into handcuffs and to regularly, needlessly, and deliberately throw individuals
to the ground in the process of doing so (which it is their custom and practice to describe
in reports as "placing [the person] on the ground");

d. It is the custom and practice at CITY OF Mora to try and cover-up and justify excessive use
of force incidents by:

(1) falsely claiming the person had committed obstruction or resisting after the fact; and

(2) ignoring their protocol for writing reports regarding the use of force, so that the team will not be alerted to investigate their excessive uses of force;

e. It is the custom and practice at CITY OF Mora to refuse to discipline its officers for misconduct and to refuse to ever find its officers have engaged in wrongdoing, in the face of obvious and repeated constitutional violations, which resulted in a foreseeable culture of police brutality and silence in the face of ongoing and repeated civil rights violations.

97. The unlawful conduct of Defendants Vangorden Coleman and Kelsky as set forth in detail herein, amounts to a custom and well-settled, widespread overall practice of police brutality deliberately insulated from police accountability, throughout the police department, even if not authorized by written law or express municipal policy, and is so permanent and well-settled as to constitute a custom or usage with the force of law.

97. Through the Defendant CITY OF Mora's continuous ratification of unconstitutional detentions, arrests, prosecutions, and excessive force, Defendant City of Mora has condoned and become the driving force of the Defendants' unconstitutional conduct.

98.Defendant Mora failed to properly train and supervise its officers to avoid their foreseeable use of excessive force, unlawful seizures and abuse of the disabled as defined under Minn stat 363A.03 Subd. 12.**Disability.** "Disability" means any condition or characteristic that renders a person a disabled person. A disabled person is any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such an impairment; (3) is regarded as having such an impairment; or (4) has an impairment that is episodic or in remission and would materially limit a major life activity when active.

99 Defendant Mora's policies, customs and practices in failing to properly train and supervise its employees were the moving force and proximate cause of the violations to Mr

Ollestad 's constitutional rights.

100 The custom, policy and practice of Defendant City of Mora of encouraging, condoning, tolerating, and ratifying the unreasonable and excessive use of illegal seizures and excessive force on citizens, as described herein were the moving force behind and the proximate cause of, the violations to Mr. Ollestad 's constitutional rights.

101 Upon information and belief, Defendant CITY of Mora has been deliberately obfuscatory and in others litigation involving excessive force claims against its officers, has made concerted efforts to withhold, destroy, conceal and delay the release of documents and correspondence that relate to the unconstitutional policies, customs, and practices set forth above, and which also evidence Defendant City of Mora's unconstitutional practices, customs, failures to train, and supervise defendant officers as set forth above.

102. The acts or omissions of Defendant city of Mora caused Mr. Ollestad to suffer physical and mental pain, among other injuries, damages and losses.

103. The actions and omissions of Defendant City of Mora as described herein deprived Mr Ollestad of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and caused his other damages.

---

**SEVENTH CLAIM FOR RELIEF**

**42 U.S.C. § 1983 – 14th Amendment - Substantive Due Process Violation**

**(against Defendants Vangorden Coleman and Kelsky)**

104 Plaintiff hereby incorporates all other paragraphs of this Complaint as if fully set forth herein.

105. Officers' attack upon Mr. Ollestad 's knowingly injured person was outrageous and conscience shocking.

106. Officer Vangorden, Coleman and Kleszky joined subsequent effort to purposefully cause pain and suffering to Mr Ollestad by reinjuring and dislocating his shoulder, and the things that they both said and yelled at Mr. Ollestad while doing so, were also outrageous and conscience shocking.

108 No one would be able to witness Officers needless and pointless attack upon such an innocent citizen– in the public courthouse and bothering no one – without feeling traumatized themselves.

109. Mr. Ollestad 's family upon viewing the video of what the Defendant officers did to their family that day, have been deeply traumatized. The brutality and callousness has been conscience shocking to them that they have had to seek out help with their own grief after watching such tortuously outrageous conduct.

119 There was absolutely no governmental interest served by what the defendant officers did to Mr. Ollestad that day. The mere 90 seconds of interaction that Officer van Gordan Colman and Kleszky let elapse before They violently attacked Mr. Ollestad was arbitrary, in violation of policy, and outrageous.

111 The exchanges had between the officers and their on-duty supervisor, Defendants Particularly the joking aiding in covering up the attack by yelling at innocent citizen and then telling Officers to take Mr. Ollestad to the jail rather than get his medical care, further solidifying this as an act of truly outrageous, deliberate, conscious-shocking government misconduct.

112 The sudden and violent arrest upon an injured man from behind with three officers in this case – in the context of just an allegation of unwanted person in the courthouse – was so egregious and extraordinary, and so severe, as to amount to brutal and inhumane abuse of official power.

**VI.PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Mr. Ollestad  respectfully requests that this Court enter judgment
in his favor and against the Defendants and grant:

a. Declaratory and injunctive relief, as appropriate;

b. Compensatory and consequential damages, including damages for emotional distress,
humiliation, loss of enjoyment of life, loss of liberty, privacy, sense of security and
individual dignity, and other damages for pain and suffering on all claims allowed by law in an
amount to be determined at trial;

c. All economic losses and damages on all claims allowed by law to be established at trial;

d. Punitive damages on all claims allowed by law and in an amount to be determined at trial.

Issuance of an Order mandating appropriate equitable relief, including, but not limited to:

a. Issuance of a formal written apology from each Defendant to Plaintiff

b. The imposition of policy changes designed to avoid future similar misconduct by
Defendants;

c. Mandatory training designed to prevent future similar misconduct by Defendants;

f. Attorneys' fees and the costs on all claims allowed by law;

g. Pre- and post-judgment interest at the lawful rate; and

h. Any further relief that this Court deems just and proper, and any other relief as allowed by
law.

# VII. REQUEST FOR TRIAL BY JURY

Plaintiff requests a trial by a jury on all issues so triable.

Respectfully submitted this 30th day of December 2024.


Thomas Richard Ollestad

/S/ Thomas Richard Ollestad

PRO SE LITIGANT

331 FOREST AVE W

MORA MN 55051

(320)3201520

tollestad9@gmail.com